Good afternoon, Your Honors. My name is Martha Hall, and I represent the petitioner Duy Pham in this case. Your Honors, in this case, all of the claims that we are litigating on appeal surround the testimony of the primary government witness, Dong, and his girlfriend, Lonnie. The first claim that I want to address is actually Claim 3. And this is the only claim on appeal that was actually discussed and addressed by the Court of Appeals of California. However, that discussion was cursory and inadequate and involved an unreasonable application of the Supreme Court cases dealing with the requirement of confrontation. Specifically, at ER 19 and 20, the Court of Appeals just said that at the hearing, out of the presence of the jury, before Dong testified, the trial court ruled on the impeachment. The trial court essentially allowed impeachment through sanitized prior convictions, but prohibited impeachment with evidence of Dong's drug problem, the counseling that he sought for lying, and his motive and bias against Duy Pham, the petitioner and the person accused of shooting Carlos Go, which would have gone to prove his motive and bias. The California Court of Appeals omits or fails to discuss other key areas of confrontation that were prohibited. And that has to do with areas of the benefits that Dong was going to reap from his testimony. Specifically, the defense attorneys were prohibited from discussing with Dong or asking Dong about the fact that he was never charged with either the actual attempted murder, conspiracy to murder, or accessory after the fact. Nor were they allowed to ask about benefits that he received in custody. And they were not allowed to go into in detail the sentencing benefits. The trial court cut off Duy Pham's attorney when he was cross-examining Dong on the three-strikes law and whether or not Dong was actually someone who was subject to the three-strikes, but instead was only facing a maximum of 20 instead of a possible 25 to life. These are the types of areas that the Supreme Court has repeatedly held a defendant must be allowed to go into under Davis v. Alaska, Delaware v. Van Arsdale, and Oldham v. Kentucky, and Banks v. Dredge. If the government is going to rest their case on criminal informants and criminal cooperators, the defense must be allowed full and fair cross-examination to get to the bottom of what is going on and to get to the bottom of the bias and motive of the person testifying. Not only did the trial court truncate the confrontation of Dong, but the trial court also prohibited the defense from putting on affirmative evidence through prior inconsistent statements of Dong, impeachment against Dong. And the district court below recognized that that was sort of the flip side of the coin of the confrontation violation and addressed that as well and considered that part and parcel of Claim 3, which it denied but granted a certificate of appealability on. I would note that the California Court of Appeals does not even address the confrontation issue, which the petitioner did raise. And I would also note that in this supplemental excerpt of record, the petition to the Supreme Court, the appellant, Dewey Pham, specifically addressed the confrontation and compulsory clause issues and cited the Supreme Court cases. I would also like to point out that the case relied on by Respondent, Holmes v. South Carolina, in our opinion, supports Mr. Pham's position. In that case, the U.S. Supreme Court struck down a South Carolina rule prohibiting third-party liability defenses if there was a strong prosecution case. Now, the Respondent here cites it, claiming that it supports the California Court's citation to the weighing of the prejudice versus the relevance. I would note that in Holmes v. South Carolina, they say, sure, this is the balancing test that is most appropriate, and that a trial court can exclude third-party liability if it's so remote in time or there's so little connection between the evidence of the third-party liability and the actual crime at issue that it appears to be irrelevant and unduly prejudicial. But that's not the case here. Chong Dong was the first person connected with the gun that was used to shoot Carlos Go. He also admitted to getting rid of clothes and getting rid of the gun. He was intricately involved even by his own admissions. And then after his we have the troubling scenario that after his arrest, he almost immediately, upon finding out that the gun had been found, shifts the blame to Dewey Pham. So the thing about the district court and the state court of appeal concluded was that there was sufficient impeachment evidence and cross-examination that afforded Pham his right to confront his witness and present his theory of the case under the Constitution clause, and that the remainder of the areas into which the defense wanted to proceed were collateral and overly prejudicial. Why isn't that correct? Well, I would, looking at some of the trial, the district court, I think the district court did review the record carefully. And at ER 419 through 420, it tries to go through some of that evidence. But the district court is not always correct about what happened. For example, the district court asks, or the district court says that Dong was cross-examined on whether or not he had a problem with honesty, and he answered that he would not lie in court. Mr. Dewey Pham's attorney then proceeded to try to extend his cross-examination, because that's not an answer to the question. That's a sort of sidestep. It's a nonresponsive answer. And then the attorney for Dewey Pham tried to follow up on that, because they knew from the probation report and his criminal record and other instances of conduct that he had a real problem with lying and was told  that he would not lie in court, and the court, the next question, after Dong said I would never lie in court, the trial court sustained the objections. And the following couple of pages that are at the supplemental excerpt of record at 085 and 086, Dewey Pham's attorney is asking the question, objection sustained, objection sustained. So he never got to really ask the question and get an answer. He asked one question. He got a nonresponsive answer, and the remainder of his cross-examination on that area was prohibited. The objections were sustained. There are also aspects that the district court cites, such as where the district court says the jury also heard evidence concerning Dewey's assertion that Dong stole personal property from him while they lived together. Again, there was a nonresponsive answer to that question, and the only way that the jury heard anything about that was from the question, but then they're instructed by the trial court that they're not to consider questions. Evidence. So a careful reading of the testimony of Dong indicates that, unfortunately, the district court's analysis is not always accurate as to whether or not he was cross-examined in these areas. The one area that there really can be no argument that he was adequately cross-examined, it has to do with the benefits and has to do with the fact that he was not ever charged with the crime against Carlos Goh and that he was not adequately cross-examined on the potential sentencing benefits. And we know that even though he was facing 20 years, he only served five to six years. And he was never adequately cross-examined on all of the benefits that he received while in custody. And there is some very strenuous argument in the record between Dewey Pham's trial counsel and the trial judge over those areas in which the trial court shut him down repeatedly. And those go directly to Davis v. Alaska and Delaware v. Phan-Arsdale. I see that I'm almost out of time. I would say that Claim 2 was denied procedural bar and the Respondent did not litigate the procedural bar below. So this Court reviews that Claim De Novo. And then as to the discovery issue, I would strongly urge the courts to reverse the lower court on the discovery issue if you do not grant the writ on Claim 3. The discovery issue is very troubling, and I don't think it's entirely speculative that this case, which was litigated at the exact same time as the Bradshaw case, which involved the shooting of San Diego police officer Hartless, and in this case, which involves a district attorney who was also involved in the Bradshaw case and was actually required to testify at a hearing after an appeal to the California Court of Appeals. And this case and the Bradshaw case, the primary witness was the initial person connected with the gun. In both cases, the initial person connected with the gun became the star witness of the prosecution against the defendant. And in both cases. Do you ever make an actual innocence claim? No, I have not. The theory of the defense was that Dong did it, not Pham, right? That's right. That's right. And it may be appropriate to look at an actual innocence claim. Perhaps now I'll go back and take a stronger look at it, but I think that on Claim 3, there is sufficient basis to grant the writ. And if not, there is significant evidence to support the discovery request and an evidentiary hearing to then litigate whether Brady was suppressed and whether false evidence went to the jury uncorrected. Thank you. May it please the Court, Vincent LaPietra on behalf of Respondent. The State Court reasonably determined that exclusion of potential impeachment material violated neither Pham's right to confrontation nor his right to present a defense. The trial court reasonably determined that the probative value of the excluded evidence was outweighed by factors articulated in Holmes v. South Carolina. And while that case determined that a state law, state evidentiary law was improper on a different ground, it did not say that where a trial court exercised its discretion pursuant to the appropriate factors, that that would be unconstitutional. Moreover, despite the exclusion of the limited impeachment evidence, Pham was able to impeach Dong extensively. And cross-examined him, as Petitioner noted, on the felonies as well as other character evidence. As the district court correctly determined, Van Arsdell is not applicable here because Pham was not prevented from establishing Dong's potential bias. He questioned Dong about the continuous delay in sentencing for his unrelated conviction, as well as he was able to present evidence that Dong was, in fact, the shooter, including evidence that Dong had admitted to being the shooter. So all of these things were presented to the jury, and they were rejected. And I wasn't shocked of the fact that he had previously shot someone relevant. Why wasn't it relevant? Well, that goes to... For impeachment. That was ground two. The discussion of that was in ground two. And while it was excluded as impeachment, I'm not quite sure what the grounds were. Perhaps it was too attenuated and the facts were different. That wasn't included in ground three. The thing is, the whole theory of the case was that Dong was the shooter, the defense, right? Yes, Your Honor. Dong had shot him, not Pham. Was it excluded under 352? I believe so. That was, as I said, Your Honor, the discussion of that prior shooting was in ground two for a wholly separate matter, and not briefed on the state court's challenge, or the state court's ruling was not challenged in ground three, and that was not discussed as improperly excluded impeachment material. So I can't tell you why it was excluded. And what do you know about the Bradshaw case that counsel talked about? Not a whole lot, Your Honor. I don't know a whole lot about it myself. I'm vaguely familiar with it, just from talking with a senior counsel in my office. Apparently, a witness in a wholly separate and unrelated case was found to have been granted some benefits that were not disclosed to the defense in that case, and in that case, the California State Court of Appeal stepped in and overturned it and remanded it and did the right thing. As we know, as the district court noted, and Respondent agrees, there's absolutely nothing connecting the two cases other than pure speculation and wishful thinking. Did they arise out of the same district? Are they the same district? Is that it? Yes, Your Honor. It was the same prosecutor, but he was found to have done that in one case and no other cases, and I think that was 15 to 20 years ago, and nothing else has happened. So for that reason, the district court properly denied an evidentiary hearing to develop any of those facts, but I would also submit that pinholster is another reason to deny an evidentiary hearing, because none of that would have been considered by the state court, and there's nothing to determine that the ‑‑ there's no reason to believe that the state court's determination of the facts was unreasonable. Unless there are any questions, Respondent submits. Thank you. Thank you. Just two brief points. First, we did address the shooting as part of Claim 3, the confrontation violation. The grounds for bringing in the shooting were twofold. One is it's a prior bad act that goes to show motive, intent, lack of accident. Under 1101 of the California Code of Evidence, which is similar to the Federal Rule of Evidence 404B, it should be admitted. And in addition to that, the trial counsel attempted to get into the shooting in direct response to Dong's claim that the reason he left the apartment was because he was so frightened and appalled that someone could shoot another person. He was, you know, portraying himself as, you know, the bystander who couldn't believe that Dewey Pham would do such a horrible thing, and then trial counsel wanted to cross-examine him on the fact that he had actually done the same thing, and he was cut off like that. So it goes not only to the 1101 prior bad act, similar to prove motive, intent, lack of mistake, but also to impeach him on his motive for moving out and impeach his testimony. What was the basis of the trial court's ruling? I think the only basis that the trial court ever cited was 352. Yeah. That's it. That's prejudice versus... Prejudice versus... ...prohibitive value. Right. And the other thing that's troubling about that is that prejudice to whom? Prejudice to the witness who's receiving the significant benefit for testifying against Dewey Pham, including not being charged with a crime? That's a troublesome interpretation of 352 as applied to abridge someone's confrontation rights. On the Bradshaw case, the connections to this case, they occurred during the same timeframe, almost exactly the same, around the same year. The DA was the same, Victor Nunez, who prosecuted Dewey Pham below, was involved in the Bradshaw case. I believe they came out of the same gang unit. And it's our position, which we briefed below and said repeatedly, that there was a culture in the district attorney's office and that there was a pattern and practice of rewarding the criminal informants and hiding those rewards at that time. At the time Dewey Pham was tried, Victor Nunez had not yet been called out by the court of appeals. At the time he was tried, and even I believe at the time of his first appeal, he was not aware of the Darren Palmer, of the Bradshaw case. Thank you.
judges: Pregerson, Noonan, Wardlaw